**Michael DERIN, Plaintiff,**

v.

**FIRST UNUM LIFE INSURANCE CO., Defendant.**

**No. 06 Civ. 6335 (CM).**

United States District Court, S.D. New York.

May 14, 2008.

Robert J. Bach, Law Office of Robert J. Bach, Esq., New York, NY, for Plaintiff.

Patrick Walter Begos, Begos and Horgan L.L.P., Westport, CT, Christopher G. Brown, Begos and Horgan L.L.P., Bronxville, NY, for Defendant.

MEMORANDUM DECISION AND OR-
DER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDG-
MENT

McMAHON, District Judge:

Plaintiff Michael Derin challenges defendant First UNUM Life Insurance Company's interpretation of a clause in his long-term disability benefits policy, arguing

that UNUM is deducting more money from the gross monthly benefit to which he is entitled than the policy permits. The parties have cross-moved for summary judgment. I grant defendant's motion and deny plaintiff's cross motion.

### Statement of Undisputed Facts

Notwithstanding both parties' efforts to create some disputed issue of material fact, the *material* facts are undisputed.

Plaintiff Michael Derin was employed by Tippetts–Abbett–McCarthy–Stratton/Tams consultants (TAMS), and its successor, EarthTech, a Tyco International Limited Company (EarthTech).

Effective December 1, 1988, UNUM issued a group long term disability policy to TAMS for its employees if they elected to participate. Plaintiff elected to participate.

Neither party has an original copy of that policy. UNUM has a copy of the current version of the policy, and has represented to the court that it was able to generate a version of the original policy from information it currently has on file. Plaintiff—without waiving his right to object that the current policy is the same as the original policy—has responded to defendant's arguments based on the provisions of the current policy. Since plaintiff—who bears the burden of proving all the elements of his claim, *see, e.g., Schaffer v. Weast,* 546 U.S. 49, 56–57, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005)—has not produced any evidence that the relevant provisions of the policy have changed over the years, the court concludes that the policy in the record is in fact the governing policy.

In 1990, plaintiff became totally disabled and began receiving long term disability benefits under the policy. The amount of his "gross monthly benefit"—defined in the policy as "the insured's benefit amount before any reduction for other income ben-

efits and earnings" (R.819)—was $4,020, which was 60% of his monthly rate of earning from the employer in effect just prior to the date the disability began. (R.822.) To determine the "monthly benefit," or the portion of the "gross monthly benefit" that would be paid by the insurer under the policy (R.819), UNUM deducted from $4,020 the amount that plaintiff was receiving from Social Security Disability (SSDI), which was $1,025 per month. According to the policy, the "other income benefits" that UNUM was authorized to deduct from the gross monthly benefit include, "The amount of disability or retirement benefits under the United States Social Security Act" that are payable as a result of the same disability for which the policy pays a benefit. (R.813–14.)

The net amount—gross monthly benefit of $4,020 less SSDI "other income benefit" of $1,025—was plaintiff's "monthly benefit." UNUM paid that amount to plaintiff every month until June 1991, when he returned to work part time. At that point, plaintiff's "monthly benefit" calculation changed to a formula set forth for persons earning more than 20% of their indexed pre-disability earnings. He continued to receive SSDI payments in addition to his payments under the policy.

Under the policy, the "gross monthly benefit" never changes as long as the plaintiff suffers from the disability that began his collection of benefits, no matter how many years pass or how his circumstances change. Since plaintiff continues to suffer from exactly the same disability that he first developed in 1990, his "gross monthly benefit" today is the same as his "gross monthly benefit" in 1990—$4,020 per month.

The policy also provides: "After the first deduction for each of the other income benefits, the monthly benefit will not be further reduced due to any cost of living

increases payable under these other income benefits." (R.812.) To take the pertinent example, although SSDI payments increase over time due to cost of living adjustments, those adjustments are never factored into the "other income benefits" deduction to calculate the "monthly benefit" payable by UNUM.

In September 1995, plaintiff's earnings from his part-time employment exceeded the maximum amount that Social Security permitted an SSDI recipient to earn and still receive benefits. He therefore ceased to be eligible for SSDI payments, and he stopped receiving them. UNUM continued to pay plaintiff a monthly benefit calculated in accordance with the policy's formula for part-time work. This continued for eight and one half years, During that entire period, plaintiff's benefits were never terminated, which would have occurred if his earnings had exceeded 80% of his indexed pre-disability earnings (his monthly earnings just prior to the onset of his disability, which were $6,700). (R.819.)

In the spring of 2004, plaintiff contacted UNUM and advised that his medical condition had deteriorated, and that he was unable to continue working. The medical condition was exactly the same medical condition from which plaintiff had suffered continuously since 1990—it simply worsened to the point that plaintiff was once again unable to work.

When plaintiff reverted to full-time disability status, UNUM reverted to calculating his monthly benefit by taking the "gross monthly benefit"—still $4,020, because plaintiff suffered from the same disability he first incurred in 1990—and subtracting from that number any "other income benefits" for which plaintiff was eligible. But plaintiff had not been eligible for his original SSDI benefit for nearly a decade, and he had been working (albeit part-time) throughout those years. So he had to file a new claim for SSDI benefits with the Social Security Administration. He was eventually awarded $1,733 per month on that claim. UNUM has deducted that amount from plaintiff's "gross monthly benefit" ever since, rather than the $1,025 that plaintiff was originally awarded in 1990. UNUM has not factored in any cost of living increases in plaintiff's SSDI payment since 2004; the deduction has been frozen at $1733.[1]

The dispute that fuels this lawsuit is where UNUM's calculation is correct.

Plaintiff contends that UNUM should deduct the original 1990 base SSDI payment of $1,025, and should resume paying him the same "monthly benefit" he was receiving when he was last totally disabled—$2,995. He argues principally that the larger benefit for which he became eligible in 2004 reflects cost of living increases awarded to SSDI beneficiaries since 1990, when his original "other income benefit" was calculated.

UNUM argues that the policy language requires it to deduct the new SSDI benefit for which plaintiff first became "eligible" when he went back on total disability sta-

1. Plaintiff is preoccupied with the fact that the monthly SSDI benefit reflected in a confirmation of plaintiff s benefits received by UNUM in August 2005 is $1,780.60 (R.899), which is different than the $1,733 that continues to be used in calculating plaintiff's monthly benefit. He claims that this demonstrates Social Security's failure to explain the basis for its calculation of his award. But the difference is simple: When plaintiff became entitled to receive SSDI benefits in November 2004, the monthly benefit to which he was entitled was $1,733. He got a Notice of Award reflecting that amount. (R.1061.) By the time UNUM received the confirmation letter in August 2005, cost of living increases had raised the monthly benefit to $1,780.60. (R.899.) Given UNUM's policy, however, the deduction was frozen at the initial amount of $1,733. The disparity runs in plaintiff's favor.

tus, or $1,733. Noting that the policy only bars UNUM from increasing the first deduction for other income benefits ($1,025) by "cost of living increases," it argues that the $1,733 SSDI benefit was not calculated by factoring in cost of living increases over time, but rather is a function of the additional earning that plaintiff had during his 13 years of part-time work.

As UNUM notes, if its interpretation were accepted, the amount of plaintiff's gross monthly benefit—$4,020—would remain at exactly the same level it was when his disability began, because the decrease in his "monthly benefit" payment from the policy would be offset, dollar for dollar, by the increased SSDI payments he is receiving.

### Conclusion of Law

UNUM's motion for summary judgment should be granted, and plaintiff's cross-motion denied.

UNUM does not argue that its determination is entitled to deference under *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and the policy in the record does not contain the "magic" language reserving to the administrator the sole and exclusive right to make decisions about the meaning of the policy. As a result, the court addresses the issue *de novo.*

Plaintiff argues that UNUM's use of the 2004 SSDI benefit as the subtrahend in the "monthly benefit" calculation violates the terms of the policy, because the payment for which he became eligible in 2004 must include cost of living adjustments over and above the SSDI benefit he received back in 1990. He thus urges that UNUM's use of the 2004 SSDI benefit, rather than the 1990 SSDI benefit, violates the clause in the policy that prohibits altering the "other income benefits" by factoring in cost of living increases.

Plaintiff's argument is wrong as a matter of law.

The formula for calculating social security disability benefits is enshrined in the United States Code. 42 U.S.C. § 423(a)(2) provides that an individual's disability insurance benefit for any month "shall be equal to his primary insurance amount for such month determined under section 415 of this title as though he had attained age 62 in the first month of his waiting period, or ... the first month for which he becomes entitled to such disability insurance benefits...." 42 U.S.C. § 415(a)(1)(A) sets forth the formula for calculating an individual's "primary insurance amount." That formula is based entirely on "average indexed monthly earnings," which are computed by dividing:

$$\frac{\text{Total (post-adjustment) wages paid in benefit computation years}}{\text{Number of months in those (benefit computation) years}}$$

42 U.S.C. § 415(b). No provision in the United States Code authorizes the Social Security Administration to compute a monthly benefit by taking a lapsed benefit—even one attributable to a pre-existing disability—and tacking on the cost of living increases for the intervening years.

Plaintiff offers no competent evidence that the Social Security Administration did not use the Congressionally-mandated formula to compute the benefit payable to him when he went back on total disability in 2004. He tries to create a disputed issue of fact on this point, by submitting an

Number of months in those (benefit computation) years

affidavit in which he asserts that an unknown representative of Social Security might have represented that the difference between the 1990 SSDI payment and the 2004 SSDI payment was cost of living adjustments. He also observes that the Notice of Award (R.1061) does not explain how his new monthly benefit was calculated. And, as noted above, he fixates on the fact that UNUM received an entitlement status confirmation which reflected an increased monthly benefit.

But what the representative from the Social Security Administration said or did not say (and plaintiff is quite non-specific about this) is irrelevant. So is the fact that the Notice of Award and the entitlement status confirmation do not explain how the monthly benefit was calculated. The law specifies how the benefit must be calculated, and on the record before me, this court has no reason to assume that Social Security did anything other than abide by the law when it made the calculation.

Thus, the premise behind plaintiff's challenge to UNUM's computation of his monthly benefit—that the "other income benefits" UNUM is deducting from his gross monthly benefit incorporate forbidden cost-of-living increases—is demonstrably flawed.

■ Plaintiff then argues that his disability should be treated as a "recurrent disability" under the policy. A "recurrent disability" means a disability "which is related to or due to the same cause(s) of a prior disability for which a monthly benefit was payable." A recurrent disability is treated "as part of the prior disability if, after receiving disability benefits under this policy, an insured: (1) *returns to his regular occupation on a full-time basis for less than six months,* and (2) performs all the material duties of his occupation." (R.810–11 (emphasis added).) When a disability recurs soon after the insured goes off disability, the policy treats the brief period of non-disability as though it had never occurred, and reverts to calculating the insured's benefits as they were originally calculated. Plaintiff urges that this rule should apply to his situation as well.

The flaw in plaintiff's argument is obvious: his disability is not "recurrent" within the meaning of the policy, because he has never returned to his regular occupation on a full-time basis since he first became disabled in 1990. There has never been a time since 1990 when plaintiff was not disabled, either wholly or partly, or when plaintiff ceased receiving some sort of disability payment under the policy. So his disability is not "recurrent," but "continuing." True, the degree of disability plaintiff suffered changed, and then changed again, over the years. But the definition of "recurrent disability" in the policy contemplates a situation in which a disabled plaintiff becomes fully abled for a brief period, only to relapse quickly after resuming full time employment. That is not and never has been plaintiff's situation.

■ Plaintiff next urges that, if his 2004 SSDI payment is to be the subtrahend in the calculation of his "monthly benefit" under the policy, fairness requires that his "gross monthly benefit" be adjusted to reflect his 2004 level of pay. The short answer to this argument (which plaintiff makes only half-heartedly) is that the policy defines "gross monthly benefit" as 60% of the income an insured was earning just prior to the onset of the disability for which he is collecting benefits. There is absolutely no dispute that plaintiff's disability began in 1990—not 2004. There-

Number of months in those (benefit computation) years

fore, his gross monthly benefit cannot be calculated off a 2004 income base.

■] Plaintiff's final argument is that, while the policy clearly prohibits cost of living increases in "other income benefits" deductions, it fails to address the situation in which he finds himself: during the course of a long-term and continuing disability, he ceased to be eligible for other income benefits, only to regain his eligibility after many years. He contends that this creates an ambiguity or a hole in the policy, which should be construed against the drafter (UNUM). *Critchlow v. First UNUM Life Ins. Co.*, 378 F.3d 246 (2d Cir.2004).

But there is no ambiguity in the policy; neither is anything missing from the policy. The policy explicitly directs UNUM to calculate the "monthly benefit" (the amount the insurance company pays) by deducting from the "gross monthly benefit" the amount of "other income benefits" for the which the insured is "eligible." Plaintiff has received two different income benefits from Social Security. One was awarded in 1990 (R.21); it expired in 1995. The second was awarded in 2004 (R.1061); it continues in effect. Plaintiff would have the court conflate the two awards, but the fact that they both emanate from the same source does not turn them into a single "other income benefit." The 2004 benefit was awarded pursuant after plaintiff made an entirely new application, which received an entirely new administrative review and which was calculated off an entirely different income base. Therefore, the two SSDI awards are separate "other income benefits."

The literal terms of the policy permitted UNUM to deduct each and every "other income benefit" that plaintiff receives from the "gross monthly benefit." Ironically,

the clause in the policy that makes this result inevitable is the very clause on which plaintiff relies: the clause that provides for a Cost of Living Freeze. That clause reads, "After the first deduction for *each* of the other income benefits, the monthly payment shall not be further reduced by any cost of living adjustment. . . ." The first deduction for the 1990 SSDI award was made in 1990; the first deduction for the 2004 award was made in 2004. Each deduction was then "frozen" to protect plaintiff's "gross monthly benefit" of $4,020 from being eroded by cost of living increases from Social Security. As a result, plaintiff continues to receive what his employer bargained for: a gross monthly benefit of $4,020 per month. The only difference is that, since 2004, more of that "gross monthly benefit" is paid for by the Government and less by the insurer.

Plaintiff argues that this result is somehow unfair to him. He points out that, if he had not lost his eligibility for his original SSDI benefit, UNUM would have to continue to pay him $2,922 per month— even as cost of living adjustments caused his original monthly SSDI benefit to increase.

But there is nothing unfair about the result. Plaintiff ignores the fact that his long years of higher earnings for part-time work—work sufficiently remunerative as to render him ineligible for SSDI payments—greatly increased the amount of SSDI to which he has become entitled. Plaintiff is still guaranteed his "gross monthly benefit" of $4,020 per month, and that amount cannot be reduced by cost of living increases that he will inevitably receive from SSDI.

There is no merit to plaintiff's contention that UNUM failed to comply with

Number of months in those (benefit computation) years

ERISA notice requirements by failing to provide a specific reason for its determination. In a letter dated March 6, 2006, UNUM told plaintiff:

> Based on Social Security Administration's report, Mr. Derin has had two distinct claims. We have based the offset to benefits beginning November 1, 2004, on the new Social Security Disability claim award and the amount of the new award. Consistent with the policy terms, we would not further reduce Mr. Derin's benefit by any cost of living increases payable after the initial November 2004 award amount.

This followed numerous calls and letters in which UNUM representatives made the same point. Plaintiff's contention that he does not know why UNUM took the position it takes is frivolous.

Defendant's motion for summary judgment is granted; plaintiff's cross-motion is denied. The clerk of the court shall dismiss the claim with prejudice.

This constitutes the decision and order of the court.